Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Cates presiding, along with Justice Welch and Justice Barbaras. The first case this morning is 5-22-0453, Hill et al. v. Cottrell, Inc. et al. Arguing for the appellant is Jeffrey McPherson. Arguing for the appellee is Brian Wendler. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, gentlemen. Good morning, Your Honor. Mr. McPherson, you're for the appellant. Would you like to proceed? I would, Your Honor. Thank you. May it please the Court. And good morning. I am Jeff McPherson. I do represent the appellant, Cottrell, Inc., which appreciates the Court's granting of leave to appeal in this case that raises an issue of personal jurisdiction. I know the Court is familiar with the briefing. The plaintiffs are Georgia residents who brought an action in St. Clair County Circuit Court. Cottrell is also a Georgia resident. The action relates to a trailer, a car-hauling trailer, the ones you see on the highway that have a bunch of cars on the trailer. This is manufactured in Georgia by Cottrell, sold in the year 2000 to a Georgia company called Allied that was headquartered in Georgia at the time and later sold. This rig was used over these years. The plaintiff, Mr. Hill, drove the trailer to Wisconsin, loaded it up with some vehicles, was in Illinois when he claims to have been injured. As far as the facts of this case reveal, that is the only connection between this incident and Illinois that had happened there. The Circuit Court denied a motion to dismiss for lack of personal jurisdiction on the basis of the recent Ford case from the Supreme Court of the United States. Respectfully, the Ford case does not support an exercise of personal jurisdiction in this case. The Ford case dealt with the claims of resident plaintiffs against a non-resident defendant. That is not the situation here. It's undisputed that these plaintiffs are Georgia residents suing in Illinois against a non-resident defendant. Respectfully, the Ford case does not address this. The cases are well established. The Rios case, based in large part on the Bristol Myers case from the Supreme Court of the United States, makes it clear that personal jurisdiction must arise from the defendant's relevant contacts with the forum. There are no relevant contacts between Cottrell and Illinois as relates to the injuries claimed by Mr. Hill in this case. Mr. McPherson, at the time this was argued, Mr. Wendler claimed that 12% of the sales for your company were in Illinois. Is that true? It's true that he did claim that, and I'm not sure about the percentage, but I will agree that Cottrell does sell, has sold trailers in Illinois. Not this trailer. Essentially, what the facts reveal, and this is in the record at pages 98-99, is that Cottrell has one customer, one major customer in Illinois. The Kassens Company, which is headquartered in Belleville, also has a distributor. Apart from those two, I believe the record reveals that Cottrell has sold, in the period between 2013 and 2021, Cottrell had sold five trailers to four different customers. Three customers had taken one, and one customer had taken two over that eight-year period. And respectfully, Your Honor, there is nothing about Mr. Hill's claim that relates to any of those sales. Mr. Hill does not claim that he was injured with respect to any of the trailers that were sold in Illinois, doesn't claim that it was serviced in Illinois. His claim is that this trailer that was sold in Georgia and then allegedly maintained and modified in Missouri is what caused his injury. There is nothing about Cottrell's contacts with Illinois that would cause this claim to arise out of or relate to those contacts. But aren't we looking at the Burger King analysis here with purposeful availment? Oh, absolutely, Your Honor. Purposeful availment is one element of that. And if your company is purposely availing itself of the use of Illinois motor fuel tax, roads, things like that, as a sales location in St. Clair County, would it surprise your company then to be sued in St. Clair County in Illinois? It certainly would not surprise the company to be sued in St. Clair County, Your Honor, for issues arising out of those contacts. If it didn't pay its Illinois taxes, it could certainly be sued in Illinois. But and if there were any kind of claim that one of the contacts in Illinois led to this action by the plaintiffs, that would be one thing. That is not the case, respectfully, Your Honor. This case is unlike, say, the Ford case. The Ford case was one in which resident plaintiffs sued a company for injuries they suffered in that state. That's not this case. This case is far more like and indeed, I think, pretty indistinguishable from the Morrison case that's cited in our brief from the 4th District in June of this year. I feel like that's a really good case for me because I know that it is not mentioned in the plaintiff's brief. The Morrison case was a case in which a person had gone to and involved these Petro truck stops. I think those are the ones with the big green signs operated by a company called T.A. A lady had her vehicle serviced at one of these centers in Arkansas, drove it into Illinois. And the claim was that the repairs let go. And so her car stopped on the shoulder and she was injured when a car ran into hers. So she sued in Illinois. And in that case, the defendant had the same kinds of centers in Illinois and conducted extensive business in Illinois. But the plaintiff's claim didn't arise from any of those contacts. Those contacts were unrelated to the plaintiff's claim. The plaintiff's claim was about something that had happened in Arkansas. And it was essentially a mere fortuity that the plaintiff was in Illinois. So it is with this case, this trailer was sold in Georgia to a Georgia customer. The man, Mr. Hill, who was using it, didn't even choose to come to Illinois. He was an employee of a trucking company. He had picked up some vehicles in Wisconsin, was delivering some to Illinois and then moved on and eventually got some medical care in Kentucky. So this case is far more like the Morrison case. And I believe pretty largely indistinguishable from the Morrison case, as shown by the fact that the plaintiffs did not try to distinguish it. I would also direct the court. And in fairness, that's a 2022 case. It talks about the Ford case. It talks about the Rios case and Bristol Myers. That is the latest word on this case. I believe it should be pretty persuasive on this case. I would also cite to the Murray against serious design case that's mentioned in our briefs. That's from the northern district of Illinois. That is a case in which a company, a Wisconsin company, built an airplane in Minnesota, sold it to an Illinois customer. The Illinois customer transferred it to a Texas owner. Some folks from Texas were using the plane in Illinois and it crashed. And where there were two deaths and some serious injuries, those plaintiffs tried to sue this Wisconsin company in Illinois over an Illinois plane crash. And the court held, no, that is not adequate. That was a that was a case in which the manufacturer of a plane had salespeople in Illinois, did training in Illinois, sold planes in Illinois. But those contacts were unrelated to this claim. These Texas folks could not sue in Illinois. This Wisconsin company, because the Wisconsin company's contacts with Illinois, were not adequate to support personal jurisdiction. Respectfully, this case is like Morrison. It's like Murray and is quite unlike Ford, which dealt with resident plaintiffs. Is there a causation element in the Burger King analysis? Well, the Burger King analysis, Your Honor, obviously has been refined a bit and I believe restricted by Bristol Myers and subsequent cases. What the Ford case talks about is how it's not solely causation that can get you personal jurisdiction. It's not solely that the thing you did caused the injury. And so there's an extent to which causation is not the issue in this case. There's no claim of causation. There's no claim that any of the actions that Cottrell takes or has taken in Illinois had any causal connection with the claims that are advanced by the plaintiffs in this case. But that's my point. In this case, the purposeful availment doctrine doesn't necessarily require causation, does it? The purposeful availment works on two things, on two levels, of course. One is general jurisdiction. If you are someone who is purposely availed yourself of the rights and privileges of operating in Illinois, and it's to the point where you are said to be at home in Illinois, then you're subject to general jurisdiction. That's not what we're talking about here. Purposeful availment also is relevant to the discussion of specific personal jurisdiction, which has essentially three elements. One is, and this is set forth in detail in the Morrison case, also in the Ford and Bristol Myers and Rios. Purposeful availment is one. If you if you're somebody who does business in Illinois, it's possible you could be sued. But then there are two more elements of that analysis. One is that the claim has to be arising out of or related to those contacts with the forum, those purposeful availment contacts. So the claim has to arise out of or relate to those contacts. And third, it has to be reasonable to exercise jurisdiction in those circumstances. And the Morrison case takes the takes you through that analysis with respect to a specific personal jurisdiction analysis. In the context of this, where you have a non-resident plaintiff trying to sue a non-resident defendant. And so, respectfully, the facts of this case bring you within bring bring the case within the Morrison case, the Murray case, the Ford case is quite strongly distinguishable in the Ford case. The context that the Ford Motor Company had with the forum states were quite pervasive. The court went on at length about how they were billboards. They were advertising. They were encouraging folks to buy these Ford cars. And the court, I believe, quoted, have you driven a Ford lately? Things are built Ford tough. And so in that context, a resident plaintiff who is receives those communications. A resident plaintiff who has been subjected to those contacts from the Ford Motor Company could sue the Ford Motor Company for injuries that occurred in that state. That is not the case here. There is no claim that this plaintiff received any communications from Cottrell encouraging the plaintiff to buy anything. Indeed, there's no claim that this is the plaintiff's trailer. The plaintiff is an employee of the company that owns the trailer. So the plaintiff didn't buy it. Cottrell didn't sell it to him. The plaintiff is not a consumer with respect to any context that Cottrell has had with the state of Illinois, which are all wholly unrelated to the plaintiff's claims. So for all of those reasons and the ones that are set forth in our brief, we would request the court to reverse the decision of the circuit court denying the motion to dismiss. OK, thank you, Mr. McPherson. You'll have a few minutes after Mr. Wendler's argument. Thank you, Your Honor. Mr. Wendler, on behalf of the employee. Yes, Your Honor. May it please the court. I am Brian Wendler. I'm here arguing on behalf of the plaintiffs and the employees in this case. In this case, I believe it's it's ironic at best that the defendant Cottrell claims that it is subject to jurisdiction, but only in Georgia and in Missouri, even though the injury happened in Illinois. It did not happen in Missouri. And in Missouri, Cottrell claims it's subject to jurisdiction only in Laclean County, which is never explained. The evidence in this case submitted in our brief establishes, as Justice Cates pointed out, 12 percent of Cottrell's trailer sales, a whopping 12 percent. That's one out of every eight trailers is sold in Illinois. It has two dealers in Illinois. It has reaped two hundred and thirty million dollars in trailer sales in Illinois. One of its two dealers has resulted in one hundred and twenty four million dollars in trailer sales by this Georgia company. It has refurbished and reaped one hundred and sixty four thousand dollars worth of refurbishment from one company in Illinois. It has sold two thousand one hundred and twenty three rigs to two companies in Illinois. That's based on the discovery we were able to obtain. That does not include the discovery that Cottrell refused to answer. We, in this case, established that with the trailer sales in Illinois, the 12 percent sales, that is one hundred and ten times more of the percentage of sales as referenced in the Harding case. That's Harding versus the Cordis Corporation that we've cited in our brief. In this case, the issue with regard to purposely availing itself of the privilege of doing business in Illinois, in this case, Cottrell, the trailer manufacturer, has not only availed itself of that privilege, but it has exploited the Illinois market like no other company has. In Harding, the court found in that case, this is a twenty twenty one opinion out of the first district, that there was sufficient contact and jurisdiction over the out of state corporation where a mere point five percent of the sales occurred in Illinois. In this case, one of the big issues is whether there's a connection between Cottrell's trailer sales in Illinois and my client's injuries. The Harding case from twenty twenty one specifically noted that the focus should be not just on the specific product, but the defendant's other sales. In that case, there was a quote, the defendant also sold other similar products directly to Illinois. And in the Harding case, the first district appellate court specifically held and stated that it is, quote, not a meaningful distinction, unquote, to focus on a single product. That's paragraph thirty four of the Harding opinion. The latest pronouncement from the United States Supreme Court on this issue is, of course, the Ford case in Ford, the United States Supreme Court specifically rejected the approach that Cottrell is taking in this case, and that is the strict causation only approach. The court in Ford specifically noted that the test is whether it arose out of or relates to the defendant's sales and business activities within the state. In Ford, there were two vehicles involved. One of them involved a Montana rollover of a Ford vehicle, and the other was the Minnesota accident where both claims were brought as product liability claims. The court held there was a quote, strong relationship, unquote, where Ford systematically served a market in Montana and Minnesota for the very, very vehicles that the plaintiffs alleged malfunctioned. There was a strong relationship among the defendant, the forum and the litigation. Notably, there was not in the Ford case a specific pinpointing of the specific vehicle that rolled over in Montana, showing that Ford specifically marketed that vehicle to the specific plaintiffs. It was sufficient that the Ford marketed its products in general to the people in Montana. Mr. McPherson indicated that the Ford case is distinguishable because Mr. Hill, in our case, did not purchase the trailer. Well, that's true. Mr. Hill did not purchase the trailer. He worked for the company that purchased the trailer. That company has two locations in Illinois, two terminals. And if he had to purchase the product himself in order to get jurisdiction over the defendant, that would make companies that sell commercial goods rather than consumer goods immune from lawsuits anywhere other than the state where they have their headquarters or where they make the product. That's not a very valid or meaningful distinction, and there's no support for that cited in the brief anywhere. This distinction between a commercial good versus a consumer good. Mr. Wendler, you would agree, though, that the Ford case did not give up the test that the matter must arise from or be related to the defendant's contacts with Illinois. I mean, that's what the Morrison case says that was being referred to by Mr. McPherson. How do you distinguish Morrison? Well, Morrison, as pointed out at paragraph 14 of the opinion, specifically notes that this was not a case involving a product, but it was a case involving a service. I think that's a distinction, although I disagree with it. It's a distinction that court made. If you're providing a service in another state, that would be different than supplying a product for interstate commerce and interstate transportation, such as the present case. Here we've got a product that, by its very nature, is designed to go interstate and travel among the various states, including into Illinois, where the purchaser, Jack Cooper Transport Company, has a couple terminals where people like Mr. Hill work. So I would distinguish it on that basis that it's a product rather than a service. And I really do think the Morrison opinion, I don't have any authority to overrule an appellate court, obviously, but I think that the Morrison case is at odds with the Ford opinion from the U.S. Supreme Court and with the Harding opinion from a year earlier out of the First District. I would note for the record that this case that we're talking about, Morrison versus J.S.K. Transport, is a Rule 23 order. It is not an opinion of this Fourth District Court. So it is subject to the Rule 23 requirements, gentlemen, when you cite cases to this court. Yes, Your Honor. I'm sorry. Go ahead, Mr. Wendler. Thank you, Your Honor. Based on the Ford Court's analysis, here, not only did Cottrell purposely avail itself of the privilege of doing business here, as I stated earlier, it exploited the Illinois market. It sold, in this case, Ford like, in this case, as in the Ford case, Cottrell has sold replacement parts to its own dealers and to independent auto shops. And that's on page 128 of the Ford opinion at paragraph 12. So, too, in the present case, Cottrell markets its trailers here and sells replacement parts here. One can go on to Cottrell's web page and order replacement parts as it does to its dealers. Also, in Ford, I think it's noteworthy to point out that the Ford Court specifically stated, in conducting so much business in the forum state, Ford enjoyed the benefits and protections of their laws. All that assistance to Ford's in-state business creates reciprocal obligations, as in the present case. Cottrell, by doing $230 million worth of sales in Illinois, created reciprocal obligations to the people of this state and to people injured in this state. In this case, not only did it create reciprocal obligations, but in this case, I think this is very significant, Cottrell raised as an affirmative defense in this case, it is invoking the Illinois statute of repose as one of its defenses in this case. Now, it can't do that in Georgia, and it can't do that under Georgia law, and it can't do that under Missouri law, but it is, in fact, invoking the benefits and protections of the state of Illinois laws. I see that I have a few minutes left, but I don't think I have anything more to add unless anyone has any questions. I rely on my brief for the rest of the argument, and at this point, I will rest. Thank you, Mr. Wendler. Thank you. Mr. McPherson, when the clock resets, you'll have a few more minutes. You may proceed. Thank you, Your Honor, I appreciate that. If I could address something Your Honor mentioned, the Rule 23, it's true, Morrison, is a Rule 23 order, and under the current version of Rule 23, of course, it is persuasive authority appropriate to be cited. I think that's 1-1-21 or 1-1-22, and this is a 2022 opinion, so respectfully, I believe that it's appropriate to cite Morrison as persuasive authority under the current version of Rule 23. Your Honor, Justice Cates, I appreciate your question to Mr. Wendler about the cases that we've cited. The way that I have mentioned those, the Morrison case, the Ford case, I've tried to distinguish those, Your Honor, on the basis that those dealt with the claims of resident plaintiffs. So does the Harding case that's cited by Mr. Wendler. All of those are resident plaintiffs' cases, and all of the cases that deal with personal jurisdiction draw a sharp distinction between resident claims and non-resident claims. Go back to Bristol-Myers. That was a case where Bristol-Myers sold $900 million worth of this drug in the state of California, and the only question in that case was whether non-California residents would be able to sue the defendant in California. There was no claim that California residents couldn't. Of course a California resident could and did in those cases. So it is with all of these cases that we're talking about, a resident plaintiff, like the plaintiffs in Ford, they can sue under circumstances in which a non-resident plaintiff cannot, and that is set forth in Rios, in Bristol-Myers, and set forth in Ford. All of those cases draw the distinction. That is the clear distinction in the cases and in the law of personal jurisdiction, and respectfully, I don't think we've heard a response to that. The Ford case is plainly distinguishable because of the discussion set forth and mentioned by Mr. Wendler about Ford's many contacts toward folks like the plaintiffs in that case. There is no claim, there is no evidence, there is no argument that there were any similar actions by Cottrell toward this plaintiff or toward anyone with a claim arising in this action. Respectfully, the claim that's set forth in this case does not, as the standard requires, arise out of or relate to any of Cottrell's actions in Illinois. The cases are all pretty clear, and this is Rios, I think, quoting Bristol-Myers, that says a corporation's continuous activity of some sorts within a state is not enough to support personal jurisdiction for claims unrelated. Rios, Bristol-Myers, those are plainly binding on this court. The Morrison case is certainly persuasive. I would also cite the Murray v. Searest design case. All of these are cited in our brief. All of these show that when you have a non-resident plaintiff, the claim must arise out of or relate to the actions of the defendant in that state, even in the situation in which a defendant has purposely availed itself of the rights and benefits of being in Illinois. So for all of those, unless there are any questions, of course, I don't mean to cut anybody off. For all of those reasons and all of the reasons that are set forth in our brief, Cottrell would request that the order denying the motion to dismiss should be set aside with instructions to the circuit court to dismiss Cottrell from this action. Okay, Justice Welch, any questions? No questions, Your Honor. Justice Barberis? No questions but a comment. I just wanted to comment to both of you that I thought the briefs were excellent and that the argument I expected to be equally so, and it was, so thank you for that. It's always nice when we have good, solid work before us. Thank you, Your Honor. Thank you, Ryder. All right, gentlemen, this matter will be taken under advisement and we will issue an order in due course. Thank you for your arguments today.